A. J. CARTWRIGHT et al., Assignees, vs. A. HOFFNUNG et al.

ASSUMPSIT.   BEFORE PRESTON, J.

FEBRUARY, 1886.

A transfer of property by an insolvent trader, to a creditor who had reason to believe the insolvency, held to be in fraud of creditors under our statute, and set aside.

DECISION OF PRESTON, J.

This is an action of assumpsit for goods sold and delivered, brought by the plaintiffs as assignees of S. J. Levey & Co., bankrupts, against the defendants Cecil Brown, R. McKibbin and Marie Unna, executors and executrix of A. Unna, deceased.

On the 19th December, defendants applied to me in Chambers, under the law relating to interpleader, for an order restraining the claimants, A. Hoffnung & Co., from proceeding against the defendants for the recovery of the amount claimed in this action.

The claimants (A. Hoffnung & Co.) appeared by counsel, who stated their claim to be an assignment of this debt with others made by the bankrupts on the 10th day of July.

On behalf of the plaintiffs it was contended that the assignment was void against them, the bankrupts at the date of the assignment being insolvent to the knowledge of the claimants.

I made the restraining order asked for, and also ordered the defendants to pay the amount claimed ($258.90) into Court, subject to further order, and directed the following issue to be tried:

Is the transfer of the debt of $258.90 from S. J. Levey & Co., of the 10th day of July, 1885, to the said A. Hoffnung & Co., valid against the plaintiffs as assignees in bankruptcy of S. J. Levey & Co.?

The case was set down for trial at the last January Term, and the parties having waived a jury, it was heard before me on the 26th day of January last.

On behalf of the plaintiffs the following testimony was introduced:—

Alex. J. Cartwright: Had claims against S. J. Levey & Co. prior to 10th of July, 1885; I had claims due and overdue for self and clients amounting to $14,000 or $15,000; they were not paid as they became due; I know A. Hoffnung; can't call to mind date when he was in Honolulu; I have understood he was brother-in-law to S. J. Levey; I have paid dividends on claims amounting to $38,223.21, paid fifteen per cent, may realize three per cent more; the stock realized a little over $3000, other assets were book debts.

Cross-examined: I did not believe they were bankrupt two or three weeks before; I was very much surprised when I heard it.

J. H. Fisher: I am clerk in Bank of Bishop & Co.; I keep some of the interest accounts of the firm; did so prior to 10th of July last year; Levey's interest account was not in my particular department; from books I think they were indebted, interest overdue, can't say how long; part was overdue since 13th March, $250 I think, interest due on notes.

F. L. Winter: Was book-keeper for Dillingham & Co., afterwards Pacific Hardware Co.; Levey was indebted to Pacific Hardware Co. and to Dillingham, prior to the 10th of July, about $950; had asked for payment quite often, put off from time to time; had not been paid up to date of bankruptcy.

Cross-examined: Part of debt was due Pacific Hardware Co., part to Dillingham & Co.

T. J. King, Manager of Union Feed Co.: S. J. Levey & Co. were indebted to Company previous to the 10th of July something over $1000; rendered bill a great many times; not paid at time of bankruptcy; portion paid since.

The plaintiffs closed their case.

On the part of the claimant the following evidence was given:

S. J. Levey: I know paper produced (assignment in question); this is my signature; I contracted debt with Hoffnung & Co.; first time Hoffnung was here he asked me for an order, said would give order for $700 to $1000; he remarked a small

order to send such a long distance, said if I gave a larger order he would give me a sufficient time to pay it in; on the strength of that I gave an order for $6000; some time after I received goods, I remitted $500; he drew on me, telling me to accept drafts, and if I had paid anything he would place it to my credit; he drew on me some time in May or June, 1884; I accepted, paid first draft, refused payment of second draft; I wrote telling him I did not wish to push myself; he came here and asked me for money; paid him on account twice I think; told me before he went away would like me to make a settlement on as easy terms as I could manage; day before, or might be day after, came to settle up; we made a settlement; he asked me if I had any money; said I had about $150 in drawer; said I won't take that; gave him notes for $200 each, fifteen I think; I spoke to him about book accounts, one or two perfectly good to collect any time; I did not want to press good customers; I did not lead him to believe I was insolvent; he asked me how business was; he said I ought to do a cash business; never told him what business was; never told him I was shaky; never told him I was in straits.

Cross-examined: Hoffnung is my brother-in-law; the drafts were $1250 each; I paid $500; he drew on me for full amount, four drafts; Bishop & Co. held drafts, I think at one, two, three and four months; I refused to pay because on due consideration I thought I ought not, because he had given me my own time; when the draft was presented can't say what debts were; believed I could pay them; paid him $300 or $400; last payment draft for £36; Hoffnung did not, I think, write for money; said he was coming out and would settle then; I wrote after draft was dishonored; received no goods after that; am not positive as to number of notes, I think fifteen; I did not know I was insolvent; I had not paid debts overdue; owed money to Cartwright; owed Mrs. Coney note, overdue, it was renewed every year; had a mortgage over stock-in-trade at time of the assignment; two mortgages, one to Bishop & Co., one to Macfarlane; I think $5000 to Bishop & Co., and $10,000 to

Macfarlane; interest was overdue, asked him to wait; Cartwright's note overdue, balance due on it; $150 was all I had in store; lot of accounts due to me; last time took stock, July, 1884; book-keeper made up accounts and approximated stock before bankruptcy, some time in September; I did not lose money or contract heavy indebtedness between assignment and bankruptcy; had a heavy stock and accounts; paid heavy accounts for interest; approximated stock at $12,000; could have found out position in July if I had looked at books.

Re-examined: Mortgage to Macfarlane was for his interest and goodwill; was not recorded; $5000 to Bishop for money lent; Cartwright did not press; paid him $600; asked Macfarlane to wait for interest to bank; have paid Cartwright money since then, fifteen notes for $200 each; have paid one since July; agreed account with Hoffnung at $3000; at time I ordered goods he said I might have five or six years.

S. M. Damon proved payment of first note for $200.

Mr. Bickerton, for defendants, contended that "A creditor who can secure sufficiency according to law to satisfy his claim, is entitled to hold it against other creditors. This right, moreover, is not affected by the debtor's insolvency, or the preferred creditor's knowledge of such insolvency." Bump on Fraudulent Conveyances, 182, and other parts of the same work and authorities therein referred in support of this contention.

Counsel also contended that the burden of proof as to the fraudulent character of the transaction was in the plaintiffs, and that the transaction sought to be impeached was not within the bankruptcy law.

Mr. Avery, for plaintiffs, relied on Section 14 of the Bankruptcy Act of last session (1884), which section reads as follows:

"Every assignment, conveyance or transfer of his (the bankrupt's) property made by him after he shall have become insolvent, or committed an act of bankruptcy, except upon a good consideration to a *bona fide* purchaser having no reasonable cause to believe him to be insolvent or bankrupt, or in contem-

plation of insolvency or bankruptcy, shall be void, and the property so transferred may be recovered and disposed of by the assignees for the benefit of the creditors."

Before arriving at a conclusion in this case, I have to consider whether on the evidence I can find that the bankrupts were insolvent, or had committed an act of bankruptcy on the 10th day of July, 1885, the date of the assignment to the claimant.

I quite agree with the learned counsel for the claimant as to the right of a debtor to prefer one creditor to the others, and that such preference would be good against his other creditors, and for which position he cites the authorities mentioned; but I cannot agree that such a preference would be good where, as in this case, it is declared void by statute, under the circumstances mentioned in that statute, and it will be seen on a very cursory view of the sections quoted from Mr. Bump's work, that he qualifies his statements of the law by excepting cases controlled by statute.

On the date of the assignment impeached, Mr. Hoffnung held three dishonored drafts of Levey & Co., and he had been in Honolulu about two months, during which time the bankrupts had paid him a few small sums on account, and on the day the settlement was made, all the available cash they had was $150. There was a registered mortgage for $5000 over their stock-in-trade, and one for $10,000 unregistered. At that time the bankrupts owed about $40,000, and it is admitted by Levey that if he had examined his books in July he could have ascertained his position. On the 15th September the firm were adjudged bankrupt on their own petition, and it appears the assets will not realize one-fifth of their debts.

It is in evidence that they had previously dishonored their acceptances and notes, and that interest on their securities was overdue and unpaid; also that they had been unable and neglected to pay debts due to Dillingham & Co., The Pacific Hardware Company, and the Union Feed Company.

I am therefore of opinion, and do find, that the bankrupts were, on the 10th day of July last, insolvent, and that they had committed acts of bankruptcy previous to that date.

I am also of opinion, and do therefore also find, that A. Hoffnung had, at the time he took the assignment sought to be impeached, notice that the bankrupts had committed a prior act of bankruptcy, and that he had reasonable cause to believe that the firm of S. J. Levey & Co. were then insolvent.

I accordingly find and adjudge that the transfer of the debt of $258.90 is invalid and void against the plaintiffs, and direct judgment to be entered accordingly.

The amount now in Court must be paid to the plaintiffs, and the costs of this action I direct to be paid by the claimants.

*Castle & Avery,* for plaintiffs.

*R. F. Bickerton,* for claimants.

February 2d, 1886.